CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 0 1 2006

JOHN F. CORCORAN, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Action No. 7:05CR00104 |
| Plaintiff, ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Hon. Glen E. Conrad |
| DAVID VINCENT FAIRFAX ) | United States District Judge |
| Defendant. ) | |

This case is before the court on defendant's motion to suppress evidence seized from the defendant at the scene of his arrest, and to suppress any statements made by the defendant to police. The defendant contends that his stop and the subsequent search violated his rights under the Fourth Amendment because his stop was based upon a tip from an unreliable informant. For the reasons stated below, the court will deny defendant's motion to suppress.

## FACTUAL BACKGROUND

On November 11, 2005, Detective Kent Daniels, of the Roanoke City Police Department, received a telephone call from Lisa Harrison. Harrison was cooperating with the government because she had pending charges, and had made several controlled buys on behalf of the police department in the past. Harrison told Daniels that David Fairfax would be arriving shortly at the Quality Inn on Franklin Road in her blue and white Ford Bronco, and would have a quantity of cocaine.

Detectives Eric Charles and Jennifer Boswell set up surveillance at the motel. Neither Daniels nor Charles remembers whether a physical description of Fairfax was given, although Boswell said he was described as a "thin, black male with short hair." While the detectives were waiting, they ran a check on Fairfax, and found that he had a suspended operator's license. Shortly thereafter, the Bronco pulled into the parking lot of the Quality Inn.

After Fairfax got out of the vehicle, carrying a number of items in his hands, the detectives approached him and identified themselves as police officers. According to the detectives, Fairfax began backing away from them with a "stunned look" on his face. Fairfax continued to back away, reaching the middle of the parking lot. Charles testified that Fairfax was looking from side to side "as though he was about to run." Charles instructed Fairfax to place the items in his hands on the ground so he could be cuffed. Fairfax placed a pair of jeans, a drink, a cellular telephone, and a soft-sided cigarette case on the ground.

The detectives asked if Fairfax had anything the officers should know about, and he said he did not. Boswell, attempting to move Fairfax's items out of the way of traffic, picked up the items left in the road, which included a cigarette case. She testified at the suppression hearing that she could immediately feel that the case contained rocks of crack cocaine and packaging. She asked Fairfax, "is this what I think it is?," and he eventually shook his head. She interpreted this as assent, and opened the case and found both crack and powder cocaine. At that point, Fairfax was placed under arrest. Following his arrest

2

and the advisement of his Miranda rights, Fairfax gave a statement acknowledging that the drugs were his.

On November 17, 2005, the defendant was indicted by a grand jury for the Western District of Virginia for possession with intent to distribute crack cocaine and possession with the intent to distribute cocaine. The defendant then filed this motion to suppress, and the court held a hearing on the motion on April 24, 2006.

## DISCUSSION

The defendant has moved to suppress all evidence seized at the scene of his arrest and statements made as a result of his stop. The defendant challenges the validity of his seizure and search, arguing that it was based upon an unreliable tip from a confidential informant. According to the defendant, the tip from the informant did not carry the "necessary indicia of reliability" to support a stop. The government has responded that the detectives had reasonable articulable suspicion to confront the defendant based upon the informant's tip.[1]

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless search and seizure is presumptively unlawful, and the government therefore bears the burden to prove that the search and seizure falls into one of the established exceptions. See United States v. Smith, 396 F.3d 579, 583 (4th Cir. 2005).

---

[1] Testimony at the suppression hearing established that the police did not charge, or intend to charge, Fairfax with driving on a suspended operator's license. The court therefore finds it unnecessary to address this justification for the stop.

3

One such exception to the warrant requirement is that an officer may stop an individual for further investigation under Terry v. Ohio, 392 U.S. 1 (1968), when he reasonably believes that criminal activity may be afoot. United States v. Mayo, 361 F.3d 802, 805 (4th Cir. 2004) (internal citation omitted). An investigative stop creates a minimal intrusion; the reasonable suspicion standard is therefore "not onerous." Park v. Shiflett, 250 F.3d 843, 850 (4th Cir. 2001). Reasonable suspicion may result from an informant's tip, based upon the content of the information and its degree of reliability. Alabama v. White, 496 U.S. 325, 330 (1990). Both factors must be considered as part of the "totality of the circumstances" analysis in determining whether there is reasonable suspicion. Id.

In this case, the defendant contends that the confidential informant was not sufficiently reliable for her information to support the stop of Fairfax. At the hearing, the detectives testified that they had the following information, obtained from a reliable informant: David Fairfax would arrive at the Quality Inn on Franklin Road, driving Lisa Harrison's blue and white Bronco, at "any time" with cocaine. The first issue is whether Harrison qualified as a "reliable" informant. Daniels testified that Harrison had pending federal charges and various prior felony convictions. Harrison had made several controlled buys that had resulted in arrests as part of the cooperation related to her pending charges, but had never given a tip by telephone.

Several factors lead the court to conclude that Harrison was a reliable informant. She had provided information in the past that had resulted in arrests. Although the type of information she had provided was different in nature from that used in the instant case, she

4

demonstrated her familiarity with the type of situations and connections with people that would lead the police to rely upon her knowledge that the defendant was carrying drugs. In addition, Harrison had performed reliably under supervision while making her past controlled buys. Moreover, Harrison relayed "particularized" knowledge of the situation, especially since the vehicle she described was her own. The fact that Harrison was a felon did not negate her credibility; the United States Court of Appeals for the Fourth Circuit has found that "an informant's status as a convicted felon does not necessarily impugn his reliability." Leverette v. Bell, 247 F.3d 160, 168 n.5 (4th Cir. 2001) (internal citations omitted). Based on the above factors, the court therefore concludes that Harrison was a reliable informant.

In addition, the court finds that the information given by Harrison to the detectives had additional indicia of reliability in that parts of the tip were verifiable at the scene. The United States Supreme Court has held that tips predicting future actions impart credibility. A person with access to information about a person's future actions "is likely to also have access to reliable information about that individual's illegal activities." Alabama v. White, 496 U.S. 325, 332 (1990) (citing Illinois v. Gates, 462 U.S. 213, 245 (1983)). The corroboration of certain details of a tip also lends credibility to other aspects of the tip. Id.

United States v. Harris, 39 F.3d 1262 (4th Cir. 1994), involved a set of facts similar to those in this case. In Harris, the court relied on the information that the defendant was selling drugs from a certain residence, used a specific vehicle to make drug deliveries, and was about to leave to make a drug delivery. Id. at 1269. Based on this information, police had stopped the vehicle as it was leaving the residence. Id. at 1268. The Fourth Circuit

found the stop to be "a proper investigatory stop based on reasonable suspicion." Id. at 1269. The facts of this case are similar to those of Harris. In this case, the police were told by a known informant that her blue and white Ford Bronco would arrive at the Quality Inn a short time after they received the tip. Less than one hour after the tip was called in, Harrison's blue and white Ford Bronco pulled up to the Quality Inn. At the time the officers stopped Fairfax, the time, place, and vehicle reported by the informant had been accurately predicted and corroborated.

The reliability of the informant, based on past cooperation with the police and the corroboration of her information, created reasonable suspicion to justify the stop and subsequent search of the defendant. Therefore, evidence seized and statements made as a result of the stop are admissible.

## CONCLUSION

Because evidence was seized pursuant to a valid stop of the defendant and law enforcement officers had reasonable articulable suspicion to stop and search the defendant based on an informant's tip, the defendant's motion to suppress will be denied.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER: This 1st day of May, 2006.

_____
United States District Judge

6

Case 7:05-cr-00104-GEC   Document 31   Filed 05/01/06   Page 6 of 6   Pageid#: 62